## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERTHA R. JONES,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 1:05-CV-1504** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **SOUTHCENTRAL EMPLOYMENT** | : | |
| **CORPORATION, d/b/a SOUTH** | : | |
| **CENTRAL WORKFORCE** | : | |
| **ADMINISTRATION and** | : | |
| **SOUTHCENTRAL WORKFORCE** | : | |
| **INVESTMENT BOARD,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

In this action Plaintiff Gertha Jones has alleged that Defendants' termination of her

employment and subsequent failure to hire her for two different positions constituted unlawful

discrimination on the basis of Plaintiff's race, age, and disability, in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and the Americans with Disabilities Act, 42

U.S.C. §§ 12101 et seq. ("ADA").  Now pending before the Court is Defendants' joint motion

for summary judgment.  (Doc. No. 29.)  For the reasons that follow, the motion will be granted

because Plaintiff is estopped from establishing a prima facie element of each of her claims,

namely, that she was qualified for any of the jobs in question.

I.      **BACKGROUND**[1]

From 1999 until December 31, 2001, Plaintiff was employed by York County as an

assistant director of monitoring in the area of employment and training services.  On

November 1, 2001, Plaintiff was provided official notice that York County would cease to

provide employment and training services and that she and a number of other employees would

be laid off from work.  Plaintiff acknowledged the notice, and the fact that she would be

permanently laid off from York County, as of December 31, 2001.  On or about November 8,

2001, Plaintiff suffered a significant back injury.  Following her injury, Plaintiff took time off

from work, although she continued to attend certain meetings in connection with her

employment, at times using a cane to assist her.  Defendants, or their employees, including

Plaintiff's supervisor, were aware that Plaintiff attended such meetings and that she used a cane.

On December 17, 2001, Plaintiff applied for two positions with the South Central Workforce

Investment Board, one for the position of Quality Assurance Coordinator and the other for the

position of Quality Assurance Monitor.  Plaintiff was advised on January 24, 2002, and on

February 13, 2002, respectively, that she would not be hired for either position.

On May 28, 2002, Plaintiff filed a complaint with the Pennsylvania Human Relations

Commission in which she averred that she "ha[s] difficulty walking, standing and sitting.  It

affects my shoulders and arms."  (Doc. No. 30, Defendants' Statement of Material Facts, ¶ 30.)

In July 2002, Plaintiff completed an ADA Intake Questionnaire in which she represented

---

[1]  The following facts are derived from the parties supported statements regarding the
undisputed facts relevant to this case, as well as certain allegations set forth in the complaint that
appear to be uncontested and that are germane to the legal principles applicable to this decision.
The Court has not found it necessary to include all such facts because many are not relevant to
the Court's ultimate decision regarding application of judicial estoppel to this case.

that she suffered from various injuries and conditions affecting her back.  (Doc. No. 34,

Plaintiff's Counterstatement of Material Facts, Ex. 2.)  In the questionnaire, Plaintiff stated that

she was "off from work" starting November 20, 2001, and was employing use of a cane.  (Id.)

Plaintiff also stated that on November 20, 2001, she contacted her supervisor to advise him of her

injury and that she did not know how long she would need to remain off from work;

nevertheless, during this time she attended four work-related meetings that took place in

Harrisburg.  (Id.)  In the questionnaire, Plaintiff represented that she "could perform the duties

[of her then-current job] without special accommodation[.]"  (Id.)  In response to a question

asking whether she had ever requested a "reasonable accommodation because of [her] disability,"

Plaintiff answered: "None."  (Id.)  At another point in the questionnaire, Plaintiff represented that

she "did and still ha[s] a back problem.  However[, she] could manage the duties of both

positions without special accommodations."  (Id.)

On February 10, 2003, Plaintiff submitted an Application for Disability Insurance

Benefits to the Social Security Administration ("SSA").[2]  In her application, Plaintiff stated: "[I]

became unable to work because of my disabling condition on November 9, 2001.  I am still

---

[2] Plaintiff's signed this application beneath the following statement:

> I KNOW THAT ANYONE WHO MAKES OR CAUSES TO BE
> MADE A FALSE STATEMENT OR REPRESENTATION OF
> MATERIAL FACT IN AN APPLICATION OR FOR USE IN
> DETERMINING A RIGHT TO PAYMENT OR FOR USE IN
> DETERMINING A RIGHT TO PAYMENT UNDER THE SOCIAL
> SECURITY ACT COMMITS A CRIME PUNISHABLE UNDER
> FEDERAL LAW BY FINE, IMPRISONMENT OR BOTH.  I
> AFFIRM THAT ALL INFORMATION I HAVE GIVEN IN
> CONNECTION WITH THIS CLAIM IS TRUE.

(Doc. No. 30, Def. Statement of Material Facts, ¶ 8.)

disabled." (Doc. No. 30, Def. Statement of Material Facts, ¶ 7.)  In a questionnaire submitted in support of her application, Plaintiff represented that her disability and attendant pain had significantly limited her mobility and ability to perform general tasks.  For example, Plaintiff stated: that she required assistance entering and exiting a bathtub, dressing, and combing her hair; that she seldom drove a car due to problems with her right leg and that she relied upon family members to provide her with transportation; that she could not lift or carry more than two or three pounds; that she had difficulty holding a pen or pencil and that she had difficulty writing checks; that she could not sit, stand, or walk for more than ten to fifteen minutes without needing to rest or change position; that she either could not or had difficulty walking, bending, and lifting; that she can climb between zero and two flights of stairs; and that her pain requires her to take medicine that causes her to sleep during the day.  (Doc. No. 32, Ex. 3, SSA Questionnaire.)

In a Social Security Administration Disability Report that Plaintiff completed in connection with her application, she represented that her illnesses, injuries, or conditions first started bothering her on November 8, 2001, and that she discontinued working on November 9, 2001. (Doc. No. 32, Ex. 4, SSA Disability Report.)  When asked in this document to indicate why she stopped working, Plaintiff responded, "back problems, could not walk, stand or sit for long periods of time legs hurt, back hurt.  I retired on 12/2001 because I could no longer do the work." (Id.)  In a Social Security Administration Retirement, Survivors and Disability Insurance Notice of Award dated April 18, 2003, the SSA notified Plaintiff that she had been found eligible to receive monthly disability benefits beginning in May 2002, and that she had been found to be disabled under the SSA's rules as of November 9, 2001.  (Doc. No. 32, Ex. 8.)  Plaintiff has continuously received monthly disability payments since May 2002.  (Doc. No. 30, Def.

Statement of Material Facts, ¶ 24.)

Plaintiff commenced the instant case by filing a complaint on July 28, 2005, alleging that Defendants' termination of her employment and failure to hire her for two positions to which she applied constituted unlawful discrimination on the basis of race, age, and disability, in violation of Title VII, the ADA, and the ADEA.

## II.    STANDARD OF REVIEW

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Id. at 248. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. Id. at 321 n.3 (quoting Fed. R. Civ. P. 56(e)); see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 282 (3d Cir. 1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its

Case 1:05-cv-01504-YK   Document 42   Filed 05/23/07   Page 6 of 26


favor.  See Anderson, 477 U.S. at 248-49.

In discrimination cases, proof at summary judgment follows a well-established "burden-shifting" approach first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] To establish a prima facie case of disability discrimination under the ADA, a plaintiff must establish that she: (1) has a disability within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) was subject to some adverse action as a result of her disability.  Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002).  Once a plaintiff has established a prima facie case of discrimination, the defendant must rebut an inference of wrongdoing with evidence of a legitimate, non-discriminatory reason for the action taken.  See Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001).  If a defendant successfully meets its burden in a discrimination case, then in order to avoid summary judgment, the plaintiff must present evidence of pretext, or cover-up, or show that discrimination played a role in the employer's decision-making and had a determinative effect on the outcome.  See Weston, 251 F.3d at 432; Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

---

[3]  The Third Circuit has made clear that employment discrimination claims brought under Title VII, the ADEA, and the ADA all fall under the same general framework: "In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose – to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well. Indeed, we routinely use Title VII and ADEA caselaw interchangeably, when there is no material difference in the question being addressed."  Newman v. GHS Osteopathic, 60 F.3d 153, 157 (3d Cir. 1995) (citing DiBiase v. SmithKline Beecham Corp., 48 F.3d 719, 724 n.5 (3d Cir. 1995)).  Accordingly, courts follow the same burden-shifting process outlined in McDonnell Douglas to discrimination claims brought under these statutes.  Newman, 60 F.3d at 157-58; see also Lawrence v. Nat'l Westminster Bank, 98 F.3d 61, 69 (3d Cir. 1996) ("As with cases brought under Title VII and ADEA, it is permissible in an ADA case for a plaintiff to prove discriminatory intent on the part of an employer through the McDonnell Douglas framework.")

III.    **DISCUSSION**

Defendants move for summary judgment on Plaintiff's claims that her involuntary termination by non-defendant York County and Defendants' subsequent failure to hire her for two positions constituted unlawful discrimination on the basis of Plaintiff's race, disability, and age, in violation of Title VII, the ADA, and the ADEA.  As their initial and primary argument in favor of summary judgment, Defendants assert that settled principles of judicial estoppel preclude Plaintiff from satisfying an essential element of a <u>prima</u> <u>facie</u> case of discrimination under any of the foregoing statutes, namely, that she was "qualified" for the employment positions in question.  Specifically, Defendants contend that because Plaintiff previously represented to the Social Security Administration ("SSA") that she was totally and permanently disabled and therefore unable to perform her job duties due to a back injury suffered in November 2001, and because the SSA accepted those representations as true and awarded Plaintiff Supplemental Security Disability Insurance ("SSDI") benefits as a result, she should be estopped from now claiming that she was, in fact, qualified to perform the essential functions of the jobs in question, with or without reasonable accommodations.

Judicial estoppel is a judge-made doctrine that "seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding."  <u>Ryan Operations G. P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1995).  In general, the doctrine is designed to prevent litigants from "playing fast and loose with the courts."  <u>Id.</u> (quoting <u>Scarano v. Central R. Co. of New Jersey</u>, 203 F.2d 510, 513 (3d Cir. 1953)).  "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage in litigation on one theory, and then seek an inconsistent advantage

by pursuing an incompatible theory."  18 Charles A. Wright, Arthur R. Miller & Edward H.

Cooper, Federal Practice & Procedure § 4477 (1981).

These types of inconsistencies have the potential to arise in litigation implicating the

ADA where a plaintiff previously applied for and was granted SSDI-type benefits.  A person

"under a disability" is entitled to SSDI benefits if "his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The ADA, in

turn, prohibits employers from discriminating against a "qualified individual with a disability,"

which is defined as "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires."  42 U.S.C. § 12111(8).  As one district court has explained, "The

potential for inconsistency arises where . . . a plaintiff applies for and receives SSDI benefits

under the theory that she is totally disabled and therefore unable to work yet subsequently sues

her former employer under the ADA alleging that she could have worked but for some

discriminatory act or policy."  Lorde v. City of Philadelphia, No. 98-5267, 2000 U.S. Dist.

LEXIS 17196, at *4 (E.D. Pa. Nov. 30, 2000).

The Supreme Court analyzed the proper application of judicial estoppel in such cases in

Cleveland v. Policy Management Corp., 526 U.S. 795 (1999).  Resolving a split among the

circuits, the Court concluded that there is no "inherent conflict" between the ADA and SSDI

because whereas the ADA expressly contemplates the possibility of an employee being qualified

with or without reasonable accommodations, the guidelines governing applications for SSDI

8

benefits do not.  <u>Id.</u> at 802-03.  In <u>Cleveland</u>, the Supreme Court concluded that the United States Court of Appeals for the Fifth Circuit erred when it held that receipt of SSDI benefits created a rebuttable presumption that the recipient was estopped from pursuing an ADA claim.  However, although the Court held that no "special negative presumption" should be applied automatically, <u>id.</u> at 802, the Court also acknowledged that "nonetheless, in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim," <u>id.</u> at 805.  Accordingly, the Court held that in order to survive summary judgment, an ADA plaintiff who previously was awarded SSDI benefits should be required to provide a sufficient explanation for the apparent inconsistency:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim.  To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

<u>Id.</u> at 807.  After <u>Cleveland</u>, the United States Court of Appeals for the Seventh Circuit has explained what is required of a plaintiff to proceed on an ADA claim after SSDI benefits have been allowed:

> <u>Cleveland's</u> analysis suggests that an ADA plaintiff may not, simply by disavowing a prior claim of total disability, perform an about-face and assert that he is a "qualified individual" who is capable of working.  Rather, . . . the plaintiff must proceed from the premise that his previous assertion of an inability to work was true, or that he in good faith believed it to be true, and he must demonstrate that the assertion was nonetheless consistent with his ability to perform the essential functions of his job.
>
>                                         * * *
>
> Explanations of the sort <u>Cleveland</u> requires are, in short, contextual

9

> – they resolve the seeming discrepancy between a claim of disability and a later claim of entitlement to work not by contradicting what the plaintiff told the Social Security Administration, but by demonstrating that those representations, understood in light of the unique focus and requirements of the SSA, leave room for the possibility that the plaintiff is able to meet the essential demands of the job to which he claims a right under the ADA.

Lee v. City of Salem, 259 F.3d 667, 674-75 (7th Cir. 2001) (cited with approval in Detz v. Greiner Indus., Inc., 346 F.3d 109, 118 (3d Cir. 2003)).

Importantly for purposes of this case, the Third Circuit has made clear that simply pointing out the statutory differences between the ADA and SSDI will not necessarily satisfy a plaintiff's burden of explaining the inconsistencies between her ADA and SSDI claims:

> Obviously, this [distinction] is true in all of these cases and, if this argument alone allowed ADA plaintiffs who had previously applied for SSDI-type benefits to survive summary judgment, summary judgment could never be granted. Because the Supreme Court indicated that summary judgment would indeed be appropriate in some cases, an ADA plaintiff must, in certain circumstances, provide some additional rationale to explain the plaintiff's apparent about-face concerning the extent of the injuries.

Motley v. N.J. State Police, 196 F.3d 160, 165 (3d Cir. 1999).

With these considerations in mind, the Court turns to the facts and circumstances of the case sub judice. As a threshold matter, the Court finds that Plaintiff's representations regarding her total disability made in support of her SSDI claim are manifestly inconsistent with her current position that she was actually qualified for, and capable of working in, her original position and the positions for she applied, and that she could have performed the essential functions of such jobs with or without reasonable accommodation.[4]

---

[4] The Court notes that nowhere in Plaintiff's complaint does she allege that Defendants' failure to hire her for the two positions for which she applied constituted discrimination in

In her application for SSDI benefits, which she submitted in February 2003, Plaintiff represented that "[I] became unable to work because of my disabling condition on November 9, 2001.  I am still disabled."  (Doc. No. 32, Ex. 2, Application for Disability Insurance Benefits.)  In the questionnaire that she completed in support of her application, Plaintiff represented that she was rendered virtually incapacitated by her back injury, with pervasive limitations on her ability to perform the most basic of tasks and to care for herself.  For example, Plaintiff represented that she "can not perform housework" due to "problems using hands, standing, lifting, [and] walking."  (Doc. No. 32, Ex. 3, SSA Questionnaire.)  Asserting that she had difficulty bending or reaching, Plaintiff advised the SSA that she was capable of performing virtually no housework "due to back pain."  (Id.)

As a result of her injuries, Plaintiff represented that she required assistance entering and exiting her bath, and that she further needed help dressing herself and combing her hair.  (Id.)  She advised that she very seldom drove a car following her injury, and that she was dependent upon her relatives to provide her with transportation services.  (Id.)  Plaintiff represented that she suffered such extensive pain in her hands as a result of her injuries that she found it difficult even

---

violation of the ADA.  Instead, Plaintiff avers that her back injury was "a determining factor in Defendants' decision to terminate her employment."  (Compl. ¶ 36) (emphasis added.) Accordingly, Plaintiff alleged that "Defendants' termination of Plaintiff's employment was a willful violation of the ADA and the PHRA."  (Id. ¶ 37.)  Notwithstanding these representations, both Plaintiff and Defendants have argued almost exclusively regarding Defendants' failure to hire Plaintiff to the positions for which she applied.  The distinction is not especially relevant for purposes of this decision because the Court concludes in any event that Plaintiff cannot establish a prima facie case of discrimination due to her representations to the SSA regarding her total disability.  Moreover, the Court notes that Plaintiff received written notice that her job would be eliminated approximately one week before she suffered the injury to her back.  Thus, the Court does not find evidence in the record that would support Plaintiff's initial claim that her original termination was predicated on her disability; in fact, the limited record indicates only that Plaintiff was notified of the job termination prior to the onset date of her disability.

to write checks.  (Id.)  In response to a question inquiring into which activities Plaintiff had to

cease following her injury, Plaintiff answered "walking, lifting, bending."  (Id.)  Plaintiff attested

that the limitations caused by her injury forced her to rest after climbing one or two steps, and

that she was typically able to climb a flight of steps at most two times a day, and sometimes none

at all.  (Id.)  Plaintiff represented that she was capable of remaining seated for only ten to fifteen

minutes without needing to change position.  (Id.)  Plaintiff stated that she could carry, at most,

two to three pounds, and that she was no longer able to raise her arms above her head.  (Id.)  As a

result of her pain, Plaintiff takes medication that causes her to sleep during the day.  (Id.)

Plaintiff's representations regarding the severity of her injuries and the limitations

suffered as a result are corroborated in the record by third-party professionals with knowledge of

Plaintiff's condition throughout 2002 and 2003.  The SSA's medical consultant noted that

Plaintiff "has an ongoing lower back pains [sic] and dysfunction and had [sic] exhausted non-

operative aggressive measure to relieve pain but to no avail."  (Doc. No. 32, Ex. 7.)  On

December 13, 2002, several months prior to Plaintiff applying for SSDI benefits, Plaintiff's

orthopedic specialist made the following notes:

> She returns today and reports that her pain is no better.  She pointed
> out to me that I had an error in my records.  In the Work Status
> section of my reports I have recorded work "as tolerated".  In fact,
> because of her significant pain and dysfunction she has been unable
> to work for nearly a year.  Activity aggravates her discomfort.
> Prolonged sitting and standing aggravate her discomfort.  She has
> been using Darvocet and Neurontin.  Spinal injections were only
> transiently helpful. . . .  She remains unable to work because of her
> back dysfunction.

(Doc. No. 32, Ex. 19, Notes of K. Nicholas Pandelidis, M.D.) (emphasis added.)  Shortly

thereafter, Doctor Pandelidis echoed this assessment in a letter to the Erin Group Administrators

12

dated January 16, 2003:

> Due to her significant pain and dysfunction, [Plaintiff] has been
> unable to work because of her back pain and dysfunction.  She is
> unable to perform her duties at work because she cannot tolerate
> prolonged sitting, walking and standing and cannot bend, twist or lift
> due to these activities causing pain.  She will be unable to work until
> we can proceed with additional testing for consideration of surgery.

(Doc. No. 32, Ex. 21, Letter from K. Nicholas Pandelidis dated Jan. 16, 2003.)  The record thus

demonstrates that Plaintiff and her treating physician consistently made clear that Plaintiff's

injury caused her to become unable to work and rendered her totally disabled.  As noted, the SSA

ultimately determined, consistent with these representations, that Plaintiff was permanently and

totally disabled and therefore entitled to SSDI benefits.  As a result of these representations and

admissions, and in light of the principles of judicial estoppel that the Supreme Court enunciated

in Cleveland, Defendants thus take the position that Plaintiff should be estopped from now

asserting that she was, in fact, qualified for the employment positions for which she applied and

was rejected.[5]

As Cleveland and Motley make clear, before a Plaintiff may be judicially estopped on the

basis of her inconsistent representations made in her claim for SSDI benefits and her claim under

---

[5]  Defendants rely principally on Detz v. Greiner Industries, Inc., 346 F.3d 109 (3d Cir.
2003), in support of their argument.  Although Detz addresses a judicial-estoppel issue very
similar to that presented in the instant case, the plaintiff in Detz was pursuing claims exclusively
under the ADEA and did not advance a claim for disability discrimination under the ADA.  Detz
follows the rule announced in Cleveland, but applies it to a claim brought under a different
statute.  As will be seen, this distinction is potentially important, because whereas a plaintiff may
be qualified for employment with or without reasonable accommodation under the ADA, the
ADEA does not contemplate accommodations when evaluating qualification because the statute
focuses exclusively on age.  In this case, the Court ultimately concludes that even taking into
account the fact that a plaintiff may be qualified under the ADA if she is able to work with
reasonable accommodation, Plaintiff has failed to explain the inconsistency between her
representations to the SSA and her instant claims.

the ADA, she must be given an opportunity to explain the inconsistency.  In order to do so,

Plaintiff is obligated to come forward with information or explanation that would warrant a

reasonable fact finder to conclude that, accepting as true Plaintiff's representations to the SSA

regarding her condition and the extent of her disability, she was nevertheless qualified and

capable of performing the essential demands of the jobs, with or without accommodation.

Plaintiff attempts to discharge this obligation by asserting that "the medical statements relied on

by Defendants are not in conflict with the essential functions of the positions as set forth in the

job descriptions."  (Doc. No. 33, at 4.)  Without addressing the question of whether a reasonable

accommodation might have been made – an issue that will be discussed below – Plaintiff

represented to the SSA that she had difficulty walking, using her hands for basic functions such

as holding a pencil, writing, driving a car, sitting for minimal periods of time, and walking.

Among other "essential functions" set forth in the job descriptions that Defendants created for

the Program Monitor 1 job position for which Plaintiff applied were included the following:

- Must be able to sit for long periods throughout the workday, with intermittent periods of standing, walking and driving, with occasional bending, twisting, reaching as necessary to carry out job duties.
- Coordinated dexterity of fingers/hands for computer work; simple dexterity of legs/feet/torso as necessary to carry out job duties.
- Sedentary work, with occasional lifting/carrying of objects with a maximum weight of ten pounds.

* * *

- Must be able to move frequently throughout the workday, as needed to carry out essential function of the job.

(Doc. No. 34, Ex. 5, Identification of Essential Function For the Americans with Disabilities Act,

14

Program Monitor 1.)  The essential job functions that were identified for the Quality Assurance

Coordinator position included virtually all of these demands.  (Doc. No. 34, Ex. 6, Identification

of Essential Function for Americans Disabilities Act [sic], Quality Assurance Coordinator.)

Plaintiff represented to the SSA that her injury and the pain resulting therefrom caused her to be

incapable of satisfying any of the foregoing conditions.  Thus, Plaintiff cannot reconcile her

previous statements merely by asserting, without any support, that "the medical statements relied

on by Defendants are not in conflict with the essential functions of the positions as set forth in

the job descriptions."  (Doc. No. 33, at 4.)

      Plaintiff also suggests that because she applied for SSDI benefits more than one year after

she had applied for and been rejected for the two job positions, "the specific symptoms and

limitations that she was expressing at that time were not necessarily the same symptoms and

limitations that she may have had in November 2001 through February 2002."  (Doc. No. 33, at

6.)  This proffered distinction is offered only as a suggestion or hypothetical reason, and Plaintiff

never actually asserts, much less attests, that her condition became aggravated over time.

Moreover, Plaintiff's suggestion regarding the possibility that her injuries were more or less

severe at different times, although potentially relevant, is ultimately no more helpful to Plaintiff's

efforts to come forward with sufficient information to explain her inconsistent statements.  This

is so because Cleveland instructs that courts must assume that Plaintiff's representations to the

SSA were truthful, and in this case Plaintiff represented that she was rendered unable to work,

and was beset with serious pain and limitations that pervaded virtually all aspects of her life, as

of November 9, 2001.  Plaintiff's application to the SSA does not indicate that her injury or pain

was less severe before the date of her application, or that the onset date of her disability actually

occurred at some later date after her injury; indeed, Plaintiff represented specifically that she

became unable to work in November 2001.  Additional evidence indicates that Plaintiff took

steps to advise her physician that she had remained incapable of working throughout 2002 due to

the severity of her pain.  Thus, not only is Plaintiff's suggestion that her pain and limitations

might have been less significant at one time over another at odds with her own representations,

but it is contradicted by other evidence from her own doctor.[6]

It appears that what Plaintiff is really asserting is that notwithstanding her representations

regarding her disability that she made to the SSA, she nevertheless remained capable of

performing the essential functions of the jobs in question with an unspecified accommodation,

and that because the SSA does not take into account the possibility of reasonable accommodation

in evaluating whether a claimant is disabled for purposes of receiving SSDI benefits, this

possibility suffices to explain the inconsistency between her claims.  In support of this argument,

Plaintiff notes that she attended "at least" four meetings in Harrisburg, Pennsylvania, following

the injury she suffered in November 2001.  Plaintiff claims that she used a cane during these

meetings, and that her supervisor and co-workers were aware of this fact.  Plaintiff also maintains

that her representations to the SSA were "not specific as to whether or not [she] could fill the

positions for which she applied and whether she continued working after the injury, which other

---

[6]  The Court recognizes that in <u>Cleveland</u>, one of the petitioner's arguments was that the statements she made in support of her SSDI claim were accurate in the time they were made. <u>Cleveland</u>, 526 U.S. at 807.  In this case, Plaintiff has not sufficiently drawn this same distinction, but has merely hypothesized that her ailments described in her application "were <u>not necessarily</u> the same symptoms and limitations that <u>she may have had</u> in November 2001 through February 2002."  (Doc. No. 33, at 6) (emphasis added.)  Thus, not only has Plaintiff not attested to this distinction, she has done no more than to suggest it as a hypothetical distinction.  The Court finds this to be an inadequate showing under <u>Cleveland</u>.

testimony proves that she did in fact do, or whether she might be able to continue in those

position [sic] with reasonable accommodation."  (Doc. No. 33, at 5.)   The question, thus, is

whether these limited suggestions and evidence provide the kind of sufficient explanation

contemplated in Cleveland and Motley.   Upon consideration, the Court finds that they do not.

 As noted above, the Third Circuit has recognized that in certain cases merely pointing

out the statutory distinctions relevant to an SSDI benefits claim and a claim of discrimination

under the ADA will not constitute an adequate explanation, since this basic legal distinction

exists in the context of any ADA claim, and "if this argument alone allowed ADA plaintiffs who

had previously applied for SSDI-type benefits to survive summary judgment, summary judgment

could never be granted."  Motley, 196 F.3d at 165.

Ignoring this limitation identified in Motley, Plaintiff argues that her case is instead

"controll[ed]" by the Third Circuit's recent decision in Turner v. Hershey Food Corp., 440 F.3d

604 (3d Cir. 2006), which Plaintiff interprets to mandate that the Court distinguish her ADA

claims solely on the basis that her representations to the SSA regarding her inability to work

lacked the qualification of reasonable accommodation.  Plaintiff's interpretation of Turner's

holding is unpersuasive, and Turner is factually distinguishable from this case, as the following

detailed review of Turner demonstrates.

In Turner, the plaintiff worked for The Hershey Company ("Hershey") in several

capacities, including as a production inspector.  Id. at 606.  At some point during her

employment, Turner was diagnosed with certain debilitating medical conditions that compelled

her to undergo several surgical procedures.  Id.  Upon Turner's return to work from one such

surgery in 1999, Hershey accommodated her new work restrictions by assigning her to

appropriate work stations that involved periods of sitting and standing, along with repeated

reaching, stretching, and twisting.  Id.  Although Turner's doctor cleared her to return to work on

the work stations to which she was assigned, she soon complained about discomfort and was

assigned to a table that the plaintiff perceived to be easier and more accommodating.  Id.  Two

years later, Hershey implemented a new policy that required its inspectors to rotate among three

different production lines to permit the inspectors to change positions hourly, to alternate

between sitting and standing, and to use both their left and right arms.  Id. at 606-07.  The goal of

the new policy was to lessen the likelihood that the inspectors would incur repetitive stress

injuries, which were perceived to be a growing problem for the company's workers.  Id.

     Shortly after Hershey advised the table inspectors regarding the implementation of the

rotation system, Turner objected and refused to work on one of the lines in question.  Id. at 607.

In addition to complaining to management, Turner contacted her attorney, who requested in

writing that management exempt the plaintiff from the rotation system.  Id.  Additionally,

Turner's physician issued her a new form that restricted the kinds of work she could perform to

that which did not require any stretching, bending, twisting, turning her neck or lower back, or

lifting more than 20 pounds.  Id.  Upon receiving the attorney's letter and the doctor's form,

Hershey management discussed whether it was feasible to accommodate Turner's request that

she be exempt from the rotation system; they ultimately concluded that it was not, since the new

system was perceived as necessary to prevent injuries to all inspectors.  Id.  Accordingly, Turner

was not permitted to continue working as a shaker-table inspector.  Id.  Turner went on short-

term disability and, thereafter, applied for and received long-term disability benefits.  Id.  She

later applied for and was awarded SSDI benefits.  Id.  Shortly after Turner's long-term disability

benefits expired, she brought suit alleging that she was not completely disabled and that she could have performed her job if Hershey had accommodated her disability by exempting her from the rotation system.  Id.  The district court granted Hershey's motion for summary judgment because, among other reasons, the court found Turner was estopped from claiming to be a qualified employee due to her earlier claim that she was totally disabled.  Id.

The Third Circuit reversed, concluding that because Turner's statements in support of her claim for long-term disability benefits and for SSDI benefits "did not state categorically that Turner could not work at all or take into account Turner's entitlement to reasonable accommodation, we see no inconsistency between these statements and her current claim."  Id. at 608.  The court rejected Hershey's argument that Turner's prior representations regarding her pain and its resultant limitations should be given estoppel effect, stating "that Turner's pain impedes her ability to perform certain occupational functions is hardly a statement of total disability.  Further, it does not address the question of whether she would continue to have pain if she were granted the accommodation that she has requested . . . .  Neither does Turner's response address the severity of the pain experienced and whether such pain would make her incapable of performing the essential functions of the shaker table position."  Id.

The court also rejected Hershey's argument that certain statements that Turner's doctor made regarding her required work limitations, and whether these restrictions would prevent Turner from performing the essential functions of her job with reasonable accommodation, the court concluded presented a question of fact for a jury.  Id. at 609.  With respect to Turner's doctor's representation regarding her inability "to do her regular job description," the court noted that Turner had conceded in the litigation that she could not perform her "regular" job

description, which was "precisely why she [was] requesting an accommodation." Id.
Accordingly, the court found that this representation regarding Turner's work limitations could
not be used to estop her from claiming to be a qualified employee within the meaning of the
ADA.

Hershey also argued that three statements Turner made in support of her application for
SSDI benefits should have estopped her from later claiming that she was qualified.  First,
Hershey pointed to Turner's representations regarding her chronic pain and the fact that the pain
limited her work ability.  Id.  However, the Third Circuit held that Turner's statements did not
foreclose the possibility that she could work with reasonable accommodation, although the
conditions "indisputably impede[d] Turner's ability to work." Id.  The court noted that the
record did not reflect that the essential functions of the job included walking long distances,
stooping, kneeling, or lifting heavy objects – all of which Turner identified as activities or
functions on which her pain had an adverse impact.  Id.

Second, Hershey argued that Turner's statement that "my doctor has informed me that my
performing additional work will cause additional disk spaces to become damaged" should be
interpreted to mean that Turner could not perform her work duties any longer.  Id.  The court
dismissed this argument, concluding that the statement did not speak to whether Turner could
perform the essential duties of employment, but rather constituted a statement about her concerns
regarding her health if she continued to perform additional duties.  Id.  Moreover, the court
emphasized that the Supreme Court in Cleveland held that statements made in support of an
SSDI application do not take into account the concept of reasonable accommodation, and
therefore the court interpreted the plaintiff to have said, in effect, "My doctor has informed me

20

that my performing additional work without reasonable accommodation will cause additional disk spaces to become damaged." Id. at 610.  Importantly, the court found this interpretation to comport not only with the rule announced in Cleveland, but with Turner's own claim for relief in which she had explicitly requested a specific accommodation to allow her to continue working: "Thus, her statement that continuing to work in a position that requires her to rotate to line 7 harms her health is not inconsistent with the idea – and cannot be read to estop her from claiming – that she can perform the essential functions of her job on [two of the production lines] without this harm to her health." Id.

Finally, Hershey contended that Turner's response of "7/2001" to the SSDI application question regarding when she became unable to work as the result of her disabilities should estop her from claiming that she was qualified to work after such date.  Id.  Citing Cleveland, the Third Circuit read this statement of disability to lack the qualifier of reasonable accommodation; thus the court found her answer to this question to be "not inconsistent with her ADA claim" in which she had expressly sought an accommodation to allow her to continue working.  Id.

The Court finds that Turner provides only superficial support for Plaintiff's claim, and finds further that the distinctions between the two cases compel different results.  In Turner, the plaintiff had at all times claimed that she was qualified to work on two of the inspection lines to which she had been assigned, but conceded that her disability prevented her from being capable of working on a third line that had been made part of the Hershey's rotation system; for this reason, Turner had expressly requested an accommodation that was central to the litigation.  The Third Circuit referred on several occasions to the fact that Turner's ADA claim was predicated on her assertion that she could have worked with a specific accommodation, and this Court

21

concludes that this fact was critical to the court's finding that Turner had come forward with a

sufficient showing under <u>Cleveland</u> to avoid estoppel.

In marked contrast to the plaintiff in <u>Turner</u>, Plaintiff Gertha Jones never requested an

accommodation following her injury and disability.[7]  Moreover, she has not provided any

indication of what kind of accommodation would theoretically have been adequate to allow her

to continue working her previous job, or that would have allowed her to qualify for the two

employment positions for which she applied and was rejected, both of which required that

Plaintiff be capable of engaging in activities that by her own admission she could no longer

tolerate after approximately November 8, 2001.  Instead, Plaintiff has merely argued, with no

clarification or explanation, that she theoretically could have performed the duties required of

each position with or without accommodation.

It appears that Plaintiff interprets <u>Turner</u> to stand for the proposition that in any case

alleging a violation of the ADA where a plaintiff previously was awarded SSDI benefits, courts

are required automatically to find a distinction between claims of disability made to the SSA with

claims of disability discrimination under the ADA simply by reference to the differing statutory

---

[7]  Although the Court is not evaluating the merits of Plaintiff's ADA claim, it is noteworthy that nothing in the record indicates that at any point following her injury in November 2001 did Plaintiff make it known to her employer that she required or desired an accommodation for her back injury.  Although the Third Circuit has recognized that requests for workplace accommodation need not be made in writing or use the words "reasonable accommodation" to trigger an employer's obligation to work with the employee to develop an appropriate accommodation, the court has made clear that "the notice [of disability and request for accommodation] nonetheless must make clear that the employee wants assistance for his or her disability.  In other words, the employer must know of both the disability <u>and the employee's desire for accommodations</u> for that disability. . . .  Employers cannot assume employees are disabled and need accommodations."  <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 313 (3d Cir. 1999) (emphasis added).

standards applicable in each context.  Although certain language in <u>Turner</u> could arguably be read so broadly, the Court finds such an interpretation to be untenable in light of <u>Motley's</u> instruction that merely noting statutory distinctions will in some cases not satisfy a plaintiff's obligation under <u>Cleveland</u> to harmonize her seemingly inconsistent positions.  Moreover, such an interpretation ignores the importance of <u>Turner's</u> factual context to the Third Circuit's decision, where the court makes clear that Turner had at all times claimed she was qualified to work if she were granted a specific reasonable accommodation.  Were this fact not critical to the court's opinion, and mere reference to the ADA's standard of "reasonable accommodation" sufficient, it would render meaningless the limiting language in <u>Motley</u> in which the Third Circuit noted that in at least some cases, mere reference to the statutory differences would not suffice to explain a plaintiff's inconsistent representations.  <u>See Motley</u>, 196 F.3d at165 (holding that in such cases where mere reference to the statutory distinctions was inadequate, a plaintiff should be required to "provide some additional rationale to explain the plaintiff's apparent about-face concerning the extent of the injuries.").

The Court finds this to be such a case where pointing to the statutory distinction between an SSDI-benefits claim and a discrimination claim under the ADA is insufficient to explain the inconsistency between claims, particularly in light of the fact that Plaintiff has never even stated clearly that the very distinction in question – reasonable accommodation – would apply in her case, much less identify the kind of accommodation that could have allowed her to satisfy the essential functions of the jobs for which she applied.  The Court thus does not interpret <u>Turner</u> as broadly as does Plaintiff, and concludes that Turner's showing was fundamentally distinct from Plaintiff's.

23

Furthermore, the Court notes that in her ADA intake questionnaire that she submitted in July 2002, Plaintiff represented that she actually "could manage the duties of both positions without special accommodations."  (Doc. No. 34, Ex. 2, ADA Intake Questionnaire, ¶ 12.)  This particular statement is wholly at odds with Plaintiff's later representation to the SSA that she was totally and permanently disabled immediately following her injury.  This was not an isolated representation, as in response to a question asking whether she was "able to perform all parts of the job in question other than the part(s) described above for which you require an accommodation," Plaintiff answered, inter alia, "I could perform the duties without special accommodation[.]"  (Id. ¶ 9.)  In response to yet another question asking whether she had ever sought a reasonable accommodation because of her disability, Plaintiff answered simply: "None."  (Id. ¶ 10.)  Unlike the plaintiff in Turner, not only has Plaintiff admittedly never requested an accommodation or identified an accommodation that would have been acceptable, but she has at times represented that she required no accommodation at all in order work.  In this litigation, commenced three years after Plaintiff made the foregoing representations in her ADA Intake Questionnaire and more than two years after Plaintiff was awarded SSDI benefits, Plaintiff now claims that she actually could have worked – perhaps with an accommodation.  In light of such inconsistencies between her representations to the SSA and in this action, Plaintiff's current general representation that she might have been able to work with an unspecified accommodation fails to satisfy her burden under Cleveland and Motley of coming forward with a sufficient explanation that would warrant a jury to find that her current claims can be reconciled with her previous statements regarding total disability.

Because the Court finds that Plaintiff is estopped from establishing that after November

24

8, 2001, she was "qualified" for any of the employment positions in question, the Court finds that Defendants are entitled to have summary judgment entered in their favor.  Accordingly, the Court finds it unnecessary to consider Defendants' secondary argument that they have proffered legitimate, non-discriminatory reasons for their failure to hire Plaintiff to the two positions for which she applied.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERTHA R. JONES,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 1:05-CV-1504** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **SOUTHCENTRAL EMPLOYMENT** | : | |
| **CORPORATION, d/b/a SOUTH** | : | |
| **CENTRAL WORKFORCE** | : | |
| **ADMINISTRATION and** | : | |
| **SOUTHCENTRAL WORKFORCE** | : | |
| **INVESTMENT BOARD,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

**AND NOW**, this 23rd day of May 2007, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendants' Motion for Summary Judgment (Doc. No. 29) is **GRANTED**.  The Clerk of Court is directed to enter Judgment in favor of Defendants and close the file.

S/ Yvette Kane
_____
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania